GLENN G. GREENO and LUILA R. GREENO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Greeno v. Commissioner
Docket No. 13604-79.
United States Tax Court
T.C. Memo 1981-521; 1981 Tax Ct. Memo LEXIS 219; 42 T.C.M. (CCH) 1112; T.C.M. (RIA) 81521; September 21, 1981. Lee Boothby, for petitioners. Gerald A. Thorpe, for respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined a deficiency in petitioners' Federal income tax for 1977 in the amount of $ 703 and an addition to tax under section 6653(a) [1] in the amount of $ 35.15. The issues for decision *220 are: (1) whether wages earned by petitioner husband during 1977 are excludable from his gross income because of his relationship with the Miletus Church, Inc.; (2) whether petitioners are entitled to a charitable contribution deduction under section 170 for property "transferred" to the Miletus Church, Inc.; and (3) whether petitioners are liable for an addition to tax under section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners, husband and wife, resided in Glens Falls, New York, at the time the petition herein was filed. They timely filed their joint Federal income tax return for the taxable year 1977 with the Internal Revenue Service Center at Andover, Massachusetts. In 1975 David L. Holmes (hereinafter Holmes), the uncle of petitioner Glenn G. Greeno (hereinafter sometimes referred to as Glenn), organized the Miletus Church, Inc. (hereinafter the Church). Holmes assumed the role of "Bishop" or "overseer" of this new testament church, the mission of which is to *221 "bring God's word and its application to the totality of life." The Church is broken into "orders," each comprised of a family unit, with the father as "priest." It has approximately 60 such orders in the United States. It is against public school education and requires each order to pay 10 percent of its earnings to the Church each year. The Church advertises in newspapers for membership and therein mentions the tax benefits of becoming a priest and forming an order. The primary functions of a priest (a "converted individual") are to direct daily education and worship and to live according to the scriptures. He presides over Sunday meetings, administers Holy Communion once a month and performs baptisms. One becomes a Miletus priest by making application and proving to Holmes that he is a truely converted individual. He is recognized with an ordination certificate and assigned duties (usually to work at his preordination employment). The Church then considers the priest's order (his family) as an integrated auxiliary. A priest is required to take a vow of poverty and to sign documents transferring all of his property and income to the order. [2] The priest is given a subsistence *222 allowance in accordance with his family's needs as he has stated them in a formal request. [3]
On May 28, 1977, Glenn applied to the Church for membership. His application was accompanied by the following completed forms: "A PUBLIC PROFESSION of belief, practices and Application"; "Statement of Christian Faith and Application"; and a "REQUEST FOR ALLOWANCES." The weekly subsistence allowance requested by Glenn ($ 194.04) exactly equaled his net wages at that time. Glenn's application was accepted on or about June 20, 1977, at *223 which time he formed the Order of St. Paul (hereinafter sometimes referred to as the Order). Glenn signed a "Covenant" to abide by the Church's teachings and Holmes issued a "Certification," "Charter" and "Ordination Certificate" to Glenn.Since that time the only members of the Order have been petitioners and their two children. On or about August 12, 1977, petitioners executed the required vow of poverty and assignment of properties to the Order, which were reaffirmed by them in a document executed before a notary public on April 10, 1979. At the time they signed the vow of poverty and assignment of properties the petitioners owned a 1971 automobile, a 1972 mobile home, 3.4 acres of land in Glens Falls, New York, and other personal property, with an aggregate value of $ 9,800. Prior to and after becoming members of the Church petitioners lived in the mobile home on the Glens Falls land and had exclusive and continuous use of the other property mentioned above. They have never actually transferred to the Order title to any personal property nor given the Church or the Order a deed to the real property. From January 1976 through 1977 Glenn was employed as a maintenance person *224 at Nibco, Inc., in Glens Falls. During 1977 he was also employed as a part-time foreman at his parents' business, J.G. Piscitelli & Sons, Inc., in Hudson Falls, New York. Both employers paid Glenn by checks payable only to him. He submitted W-4 Forms after joining the Church, claiming 18 exemptions so that no Federal income tax would be withheld from his pay. After becoming members of the Church the petitioners opened checking and savings accounts in the name of the Order, against which, according to agreements with the banks, only the petitioners could make withdrawals or draw checks. Glenn endorsed his payroll checks and deposited them into the Order's checking account and then petitioners would draw checks against that account to pay their personal, living and family expenses. From the time he became a priest of the Church, Glenn has received no formal theological education whatsoever. His duties have consisted of reading from the Bible, presiding over Sunday religious meetings (attended by his family and an occasional close friend or relative), and administering monthly Communion. He has never performed a marriage, baptism, or other such ceremony. Glenn described the *225 duties of a Miletus priest as those "required of any believing Christian." On July 22, 1975, the Miletus Church, Inc., was issued a determination letter indicating that it was exempt from Federal income tax under section 501(c)(3).Its tax exempt status was in effect during the taxable year 1977. Petitioners' Order, however, has never applied for nor received exempt status under section 501(c)(3). On their Federal income tax return for 1977 the petitioners reported no income and claimed a charitable contribution deduction in an amount equal to the sum of Glenn's wages plus the fair market value of the real and personal property allegedly transferred by them to the Order. Respondent has determined that petitioners improperly failed to report their income for 1977. Further, he determined that petitioners are not entitled to a charitable contribution deduction for that year, and that they are liable for an addition to tax under section 6653(a). OPINION Petitioners assert that Glenn earned income only as an agent of the Order and thus is not taxable on it. They also maintain that by transferring all of their property and rights to income to the Order they are entitled to a *226 charitable contribution deduction under section 170.Respondent takes a contrary position on both issues. The facts of this case and the arguments made by the parties are, in substance, identical to those which have been presented to us in more recent cases than we would like to recall. See McGahen v. Commissioner, 76 T.C. 468 (March 26, 1981). [4] Cf. Calvin K. of Oakknoll v. Commissioner, 69 T.C. 770 (1978), affd. 603 F.2d 211 (2d Cir. 1979). In each of these cases we have sustained the respondent's determination, and our result in the instant matter is no different.
*227 Petitioners have the burden to prove the merits of their claims and to overcome the presumption of correctness which attaches to respondent's determination. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Glenn has failed to show that he was an agent of the Order, thus no assignment of his earnings to it is effectual for tax purposes. Lucas v. Earl, 281 U.S. 111 (1930); McGahen v. Commissioner, supra.Furthermore, he has not proved either that the Order is an entity described in section 170(c)(2) or that contributions were actually made to it. Consequently, we hold that petitioners must include in their income for 1977 wages earned by Glenn in that year and that they are not entitled to a charitable contribution deduction for property or cash allegedly transferred to the Order. Respondent has determined that petitioners are liable for the addition to tax under section 6653(a) for negligence or intentional disregard of rules and regulations. Once again, petitioners bear the burden to overcome respondent's determination. McGahen v. Commissioner, supra; *228 Axelrod v. Commissioner, 56 T.C. 248 (1971). Petitioners have presented no evidence on this issue, and what evidence does exist favors respondent's determination, thus we sustain it. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in issue.↩
2. Although his statements were highly contradictory and confusing, Holmes testified that he had received at most two deeds to real property. He also testified that when a Church member resigns or is expelled, that individual retains all property "transferred" to the Church or an order. This is so because the individual has never relinquished use, possession, and control of the property and the Church does not believe in civil court, thus it would not go to court to get the property. ↩
3. Although there is no fee to become a Miletus priest, having become one the priest must↩ give 10 percent or more of his salary to the parent organization for Holmes' expenses.
4. See e.g. Minckler v. Commissioner, T.C. Memo. 1981-343; White v. Commissioner, T.C. Memo. 1981-147; Lysiak v. Commissioner, T.C. Memo. 1981-108; Young v. Commissioner, T.C. Memo. 1981-109; Hall v. Commissioner, T.C. Memo. 1981-143; Self v. Commissioner, T.C. Memo. 1981-232; Abney v. Commissioner, T.C. Memo. 1980-27; Baker v. Commissioner, T.C. Memo. 1980-367; Manson v. Commissioner, T.C. Memo. 1980-315; Brown v. Commissioner, T.C. Memo. 1980-553; Lynch v. Commissioner, T.C. Memo. 1980-464; Holter v. Commissioner, T.C. Memo. 1980-447; Niemeyer v. Commissioner, T.C. Memo. 1980-519↩.