Eric A. POLLARD, et al.,
Petitioners-Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE SERVICE,**
Respondent-Appellee.

No. 85–8436.

United States Court of Appeals,
Eleventh Circuit.

April 14, 1986.

McLaughlin, Appellate Section, Tax Div., U.S. Dept. of Justice, Washington, D.C., for respondent-appellee.

Before JOHNSON and HATCHETT, Circuit Judges, and MURPHY *, District Judge.

JOHNSON, Circuit Judge:

This is another in a long line of suits brought by the commissioner of the Internal Revenue Service (IRS) against individuals who attempt to shield themselves from income tax by taking sham vows of poverty and purportedly turning over their income to so-called religious orders.[1] In this case we AFFIRM the decision of the tax court in favor of the commissioner, and we further impose SANCTIONS for frivolous appeal under Fed.R.App.P. 38.

I

The delinquent taxpayers here are members of the Calvary Temple Church in East Point, Georgia. Calvary is a functioning church with some 300 members, regular services, and a thriving evangelical ministry. The church has roughly 20 religious "orders," which it describes as "integrated auxiliaries" of the church. Each order consists simply of the members of one family.

To join—or in effect, to become—orders, church members execute "vows of poverty," ostensibly conveying their property and future income to their orders. Theoretically, the church controls the disposition of this property and income; in practice, as the tax court found, the church members administer their own financial affairs as before. The fiction of church control is maintained through a system of "allowances," for which the members of the order apply to the church. The allowance—

Lee Boothby, Berrien Springs, Mich., for petitioners-appellants.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Chief, Richard Farber, George L. Hastings, Jr., Teresa E.

---

* Honorable Harold L. Murphy, U.S. District Judge for the Northern District of Georgia, sitting by designation.

1. See *Billman v. Commissioner,* 83 T.C. 534, 537 (1984): "The court has been inundated with a flood of tax protestor cases involving sham or questionable 'churches,' spurious religious 'orders,' and patently deceptive 'vows of poverty.'"

which is always granted—roughly equals the wage-earner's income.

Most members of these orders work for private or government employers. A few work for the Calvary Church. Some of the individuals in the instant suit filed tax returns claiming exemption from personal income taxes because of their membership in these orders. Many of these returns contained no financial information and were accompanied by tax protest literature. Some other church members filed returns claiming that any income for which they were chargeable was offset by deductible contributions to Calvary Church in the amount of their annual incomes.

The commissioner of the IRS determined that each of these taxpayers owed back taxes. The IRS also assessed certain additions to these taxes for negligence, failure to file valid returns, and failure to pay estimated taxes. The taxpayers petitioned the tax court for redetermination of their liabilities. In a carefully reasoned opinion the tax court denied the balance of the church members' claims. Those church members appeal certain issues to this Court.

## II

■ The first question presented on appeal is whether appellants' incomes are taxable. We hold that they are.

The tax court properly rejected appellants' claim that the income they "assigned" to their religious orders pursuant to vows of poverty was income to the religious body, not the members. This argument has been repeatedly disapproved where the court has found no agent-principal relationship between the order and the member. *See, e.g., Fogarty v. United States*, 780 F.2d 1005 (Fed.Cir.1986); *Mone v. Commissioner*, 774 F.2d 570 (2d Cir. 1985); *Stephenson v. Commissioner*, 748 F.2d 331 (6th Cir.1984); *Macior v. Commissioner*, 48 T.C.M. (CCH) 91 (1984), *aff'd without published opinion*, 758 F.2d 653 (6th Cir.1985); *McGahen v. Commissioner*, 76 T.C. 468 (1981), *aff'd without published opinion*, 720 F.2d 664 (3d Cir.1983); *Lynch*

*v. Commissioner*, 41 T.C.M. (CCH) 204 (1980), *aff'd by unpublished order* (1st Cir. June 2, 1981); *Schuster v. Commissioner*, 84 T.C. 764 (1985), *appeal pending* (7th Cir.); *Greeno v. Commissioner*, 42 T.C.M. (CCH) 1112 (1981); *White v. Commissioner*, 41 T.C.M. (CCH) 1180 (1981).

In *McGahen*, 76 T.C. at 478, the tax court set out the requirement of an agent-principal relationship for exemption from tax under these circumstances:

> Where ... there is no agent-principal relationship, it is a basic rule of tax law that an assignment by a tax-payer of compensation for services to another person is ineffectual to relieve the taxpayer of Federal income tax liability on such compensation regardless of the motivation behind the assignment.

The Second Circuit recently explained the agency rule further:

> To prove assignment of income on an agency theory, the taxpayers bear a double burden: they must show that a contractual relationship existed between their secular employers and their religious order, and that the religious order controlled or restricted the taxpayers' use of the money purportedly turned over to the order.

*Mone*, 774 F.2d at 573.

Here the tax court found that appellants continued to handle their financial affairs in the same manner before and after their vows of poverty. The church had nothing to do with where church members worked, and appellants took home checks in their own names. Some bought automobiles and real property in their own names. The church placed no restrictions on appellants' use of the "allowances" that the church provided them out of their own money (which never changed hands), and required no accounting of how the money was spent. The allowances always approximated the appellants' actual incomes.

The tax court's findings clearly establish that no agency-principal relationship existed between the orders and these church members. We discern no error in the

court's analysis. Appellants' efforts to distinguish cases such as *McGahen* and *Greeno, supra,* are unavailing. They argue that the churches considered therein were "shams,"[2] but their church, on the contrary, conducts regular services and supports considerable evangelical activity. We accept appellants' assertions of institutional sincerity. But the Calvary Church's religious bona fides are irrelevant—it is the purported assignment of income here that is a "sham," and for tax rather than religious reasons. The fact is that no agency relationship exists between the orders and their members, which are one and the same. Courts have reached the identical conclusion where the delinquent taxpayers in question were members of established Catholic orders. *See, e.g., Fogarty, supra,* slip op. (Jesuit father earned income in individual capacity, not as agent of order); *Macior, supra,* 48 T.C.M. (CCH) 92 (Franciscan friar); *Schuster, supra,* 84 T.C. 764 (sister in Catholic order).

We find unpersuasive appellants' suggestion that the incomes of Robert E. McCurry, Evelyn E. McCurry and Michael Barton are not subject to the agency-principal rule, since these appellants are employed by the church. Church employees, like other employees, receive and spend their incomes in their individual capacities. These appellants cannot be said to earn or to manage their incomes for their orders as agents; again, they and their orders are one and the same. Thus, we conclude with the tax court that the incomes of all the appellants are properly subject to tax.

### III

■ Appellants next challenge the commissioner's use of statistical tables to calculate compensation for church members Michael Barton and Kenneth Smith. Michael Barton, who claims to be a minister of Calvary Temple Church, testified that he received some $50 per week from the church plus lodging and meals provided by

church members. However, he adduced no proof of this income for the years 1976 and 1977. Kenneth Smith worked as a subcontractor in 1976 but refused to reveal his income or to produce records for that year. Accordingly, the IRS calculated the incomes of Barton and Smith based on Bureau of Labor statistics which compute the cost of living in particular geographical locations.

Appellants argue that the Bureau of Labor tables do not accurately reflect the costs of sacrificial ministry. However, the tax court approved the commissioner's computations for two reasons. First, the commissioner's determinations are presumptively correct and appellants did not prove these to be actually in error, which is their burden. *See Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); *Taylor v. Commissioner,* 771 F.2d 478, 479 (11th Cir.1985). Second, the IRS has broad authority to calculate income in such cases and the tax court has expressly approved the use of Bureau of Labor statistics for this purpose. *Giddio v. Commissioner,* 54 T.C. 1530, 1533 (1970).

We find no error in the tax court's analysis. It lay in appellants' power to prove their actual incomes and to controvert the statistics, but they did not choose to do so.

### IV

■ Appellants argue next that if their wages do constitute income, then their assignments of those wages to their orders are deductible charitable contributions to the Calvary Temple Church.

The tax court rejected this argument on three grounds. First, the court found that most of the appellants claimed charitable contribution deductions equal to or in excess of their incomes for the years at issue. However, § 170(b)(1)(A)(i) of the IRS Code limits the charitable contribution deduction available to an individual to 50 percent of adjusted gross income. Thus, the bulk of these claims must be automatically disal-

---

**2.** One such institution has been called "the Church of the Immaculate Deduction." *See Bill-*    *man,* 83 T.C. at 537 n. 3.

lowed. Second, to qualify under Code § 170(c), a charitable contribution must be one over which the contributor has surrendered dominion and control. The tax court found that appellants did not as a practical matter relinquish control over these funds.

Third, to the extent that appellants made some smaller contributions to the church, they may not claim those deductions because the church itself has not qualified as a charitable organization for tax purposes under Code § 501(c)(3). It was appellants' burden to show that the church should qualify. *See McGahen*, 76 T.C. at 481. The church made no such showing—indeed, it refused to open its books for discovery on the narrow question of charitable qualification, even in the face of a subpoena. A church that elects to preserve its secrecy on financial matters relevant to qualification as a charitable organization for tax purposes also elects to forgo the benefits of charitable donation deductions.

Again, we find no error in the tax court's analysis.

## V

■ Appellants maintain that the tax court abused its discretion in making two kinds of evidentiary rulings. First, the church members allege that the court improperly excluded certain portions of church records they sought to introduce to establish the amounts of claimed charitable contributions. Although appellants' arguments of error are unconvincing, in any case we find such error harmless given that appellants failed to establish that donations in any amount would qualify as charitable deductions here.

■ Appellants further claim error under Fed.R.Evid. 612 in the tax court's refusal to allow appellants' counsel access to an administrative file to which an IRS agent referred to refresh his memory during cross-examination. However, our reading of the record indicates that the court did allow counsel to review those writings that the agent actually used to refresh his memory. It simply did not grant access to the full three boxes of documents that constituted the witness' administrative file. We find no abuse of discretion here.

## VI

We turn finally to several conclusory allegations by appellants which may be dispensed with briefly. Appellants first maintain that they "are not liable for a negligence penalty or other sanctions because any failure to file a timely return was based upon legal advice, lack of cooperation by the IRS, and genuine religious beliefs." They cite no relevant law.

■ Taxpayers bear the burden in the tax court of proving that additions to tax are improperly determined. *Axelrod v. Commissioner*, 56 T.C. 248, 258 (1971). Appellants did not meet this burden at trial or on appeal. Thus, we affirm the imposition of additions to tax.

Appellants also allege, without substantial argument, that appellant Robert D. May did not actually realize the capital gain from the sale of certain real property for which the IRS held him liable. However, May refused to offer any evidence to prove his basis in this property and the tax court did not credit his own "self-serving" testimony. Appellant May points to no specific error in this ruling, and we discern none.

## VII

■ Appellee asks this Court to assess sanctions against appellants under Fed.R. App.P. 38 for frivolous appeal. Rule 38 authorizes the award of "just damages and single or double costs to the appellee" in such a case. We find that sanctions are in order here. Not only have the courts repeatedly rejected arguments similar to those offered by appellants, but they have imposed sanctions for frivolous appeal in precisely this sort of case. *See, e.g., Mone*, 774 F.2d at 575–76.

We direct that the appellants pay double costs and attorney's fees, to be assessed by the Clerk of this Court upon verified submissions by the parties.

AFFIRMED and SANCTIONS IMPOSED.