ROBERT E. McCURRY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent RONALD J. McCURRY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McCurry v. Commissioner
Dockets Nos. 419-86, 2184-86.
United States Tax Court
T.C. Memo 1988-447; 1988 Tax Ct. Memo LEXIS 475; 56 T.C.M. (CCH) 253; T.C.M. (RIA) 88447; September 20, 1988. *475 Ps filed no returns for the years in issue and declined to offer proof regarding their income, deductions and credits. Held, taxable income and miscellaneous additions to tax determined. Robert E. McCurry, pro se. Ronald J. McCurry, pro se. Eric B. Jorgensen, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Chief Judge: Respondent *476 in these consolidated cases determined the following deficiencies in income tax and additions to tax: Additions to Tax
Section
Section
Section
Petitioner
Year
Deficiency
6651(a)(1) [1]
6653(a)(1) [2]
6654
Robert E. McCurry
1978
$  8,621.70
$ 2,124.18
$ 431.08
225.46
1979
10,063.90
2,515.98
503.20
344.08
1980
12,060.90
3,015.23
603.05
636.07
1981
14,411.10
3,602.78
720.56
892.69
1982
14,711.80
3,677.85
735.57
1,137.38
1983
14,699.95
3,674.99
735.00
695.47
Ronald J. McCurry
1977
6,182.00
1,545.50
309.10
220.09
1978
7,188.00
1,797.00
359.40
230.02
1979
8,209.00
2,052.25
410.45
341.49
1980
9,963.00
2,490.75
498.15
635.44
1981
11,649.00
2,912.25
582.45
892.60
1982
11,682.00
2,920.50
584.10
1,137.35
1983
11,362.00
2,840.50
568.10
698.00
*477 The issues for decision are: 1) Whether petitioner Robert E. McCurry has unreported taxable income for the years 19878, 1979, 1980, 1981, 1982 and 1983; 2) Whether petitioner Ronald J. McCurry had unreported taxable income for the years 1977, 1978, 1979, 1980, 1981, 1982 and 1983; 3) Whether petitioners are liable for additions to tax under section 6651(a)(1) for failure to file income tax returns; 4) Whether petitioners are liable for additions to tax under sections 6653(a)(1) and 6653(a)(2) for negligence or intentional disregard of rules and regulations; and 5) Whether petitioners are liable for additions to tax under section 6654 for underpayments of estimated tax. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. At the time petitioner Robert E. McCurry (Robert) filed his petition herein, he resided in Atlanta, Georgia. At the time petitioner Ronald J. McCurry (Ronald) filed his petition he resided in Atlanta, Georgia. Robert is the father of Ronald. Robert is married and has a wife, Evelyn. In addition to *478 Ronald, Robert has another adult son, Robert D. McCurry (Robert D.). Ronald is married and has a wife, Pamela Anne. He and his wife have three children. Ronald and his wife and family maintain their own household. Robert is the pastor of the Calvary Temple Bible Church in East Point, Georgia (Calvary Temple or the church). Calvary Temple is a functioning church which conducts regular services and has a thriving biblical ministry. As of the time of trial, Robert had been the pastor of Calvary Temple for 29 years. Ronald is the associate pastor of Calvary Temple. As of the time of trial, he had been the associate pastor of Calvary Temple for 14 years. Robert, his wife Evelyn and Robert D. were petitioners in an earlier consolidated group of cases before this Court. See Pollard v. Commissioner,T.C. Memo. 1984-536, affd. 786 F.2d 1063 (11th Cir. 1986). Most of the church members worked for private or government employers. A few, including Robert and his wife Evelyn, worked for the church. Robert D. worked for Delta Airlines. Robert, as pastor of the church, would issue documents to members, certifying that the member during the year *479 had "served as an appointed agent performing directed duties as a missionary and Christian priest * * *." Robert, as pastor, would also issue "receipts" to the members, stating that the church during the year had received various listed property and funds from the member. These receipts also described the income which the member earned during the year as: Remuneration received for assigned service [as] agent of the Calvary Temple Church. Not income nor wages in accordance with IRC 3121(b)(8) and/or 3401(a)(9). The Board of Calvary Temple adopted a resolution providing that $ 125 per week would be paid to Robert in 1977. The church board also adopted a resolution that $ 100 per week would be paid to Robert's wife Evelyn during 1977. The $ 125 weekly amount to Robert was stated to be for the following purposes: 1) $ 50 as an automobile allowance, 2) $ 50 as a parsonage allowance and 3) $ 25 as an allowance for miscellaneous office and entertainment expenses. Robert and his wife Evelyn filed joint individual income tax returns for their taxable years 1971, 1972, 1973, 1974 and 1975. On these returns Robert reported earning $ 5,200 of annual income *480 from being a minister. Robert's wife Evelyn filed a separate individual income tax return for 1976, which the director of the Internal Revenue Service Center, Chamblee, Georgia, determined was not acceptable as a return. The Form 1040 submitted contained no pertinent information regarding Robert's taxable income. Many of the lines on the form were filled in with the words "Object-Self-Incrimination." Robert filed no individual income tax returns for the taxable years 1977, 1978, 1979, 1980, 1981, 1982 and 1983. Ronald and his wife Pamela Anne filed joint individual income tax returns for their taxable years 1974, 1975 and 1976. Ronald on these returns listed his occupation as that of teacher. On the 1974 return, Ronald reported receiving $ 2,649.45 as wages or compensation from Calvary Temple and $ 204.00 as wages or compensation from an entity called Central Christian Schools, Inc. (Central Christian Schools). On the 1975 return, Ronald reported receiving $ 4,689 as wages or compensation from Calvary Temple and $ 3 (uncategorized) from Central Christian Schools. Central Christian Schools, on the Forms W-2 which is furnished Ronald, gave as its address the same address *481 as that of Calvary Temple. Ronald filed no individual income tax returns for the taxable years 1977, 1978, 1979, 1980, 1981, 1982 and 1983. Respondent in his respective notices of deficiency to Robert and Ronald determined that each had unreported taxable income and was liable for certain additions to tax. Respondent reconstructed the taxable income of each using the estimated cost of living figures published by the United States Department of Labor for a family of four on a high budget in the Atlanta area during the years 1977 through 1983. Based on these figures, respondent determined that each petitioner had the following amounts of unreported taxable income: Unreported
Petitioner
Year
Taxable Income
Robert
1978
$ 24,666.00
1979
27,673.00
1980
31,229.00
1981
34,623.00
1982
36,770.00
1983
38,609.00
Ronald
1977
$ 22,584.00
1978
24,666.00
1979
27,673.00
1980
31,229.00
1981
34,623.00
1982
36,770.00
1983
38,609.00
Each petitioner in his petition alleged that the statute of limitations had run on his pre-1981 taxable years. The parties have now stipulated that the notice of deficiency to each petitioner *482 was timely issued by respondent. Moreover, it is also stipulated that neither petitioner filed a return for any of the taxable years in issue. Petitioners are therefore deemed to have abandoned any issue concerning the statute of limitations. OPINION These cases involve respondent's determinations that petitioners had unreported taxable income and are liable for certain additions to tax. Respondent's determinations in his notices of deficiency are presumed correct. Petitioners bear the burden of proof and must establish that respondent's determinations in the notices are erroneous. Rule 142(a). Unreported Taxable Income
Petitioners throughout these proceedings have maintained that they derived no taxable income from any source and had no taxable income to report. Their position is that they "are Ministers of the Gospel of Jesus Christ * * * living by the grace and mercy of God, and not by receipt of taxable worldly income." Neither petitioner filed returns for the taxable years here in issue. Since petitioners failed to maintain or produce adequate books and records concerning their taxable income, respondent reconstructed the taxable income of each using the *483 estimated cost of living figures published by the United States Department of Labor for a family of four on a high budget in the Atlanta area during the years 1977 through 1983. Respondent on brief now concedes that the estimated amounts of unreported taxable income determined in his notices of deficiency are too high. Respondent instead accepts a determination of petitioners' income by using the low budget cost of living figures for a family of four in the Atlanta area for the years in issue. These lower, annual cost of living figures are as follows: Year
Amount
1977
$  9,954.00
1978
10,495.00
1979
11,622.00
1980
13,082.00
1981
14,419.00
1982
15,313.00
1983
16,079.00
At trial, to support their contention that their sole means of support came from the receipt of nontaxable gifts, petitioners offered the testimony of members of the church. These members testified that they made gifts of food or clothing to petitioners. These witnesses further testified that petitioners had a very modest lifestyle. Additionally, other evidence introduced showed that the church, in many instances, directly paid petitioners' housing expenses. While petitioners, *484 as respondent acknowledges, did not have the amounts of taxable income determined in the notices of deficiency, we do not believe that they had no taxable income. Robert, on his returns for the years 1971 through 1975, reported earning $ 5,200 per year as a minister. In Pollard v. Commissioner,T.C. Memo. 1984-536, affd. 786 F.2d 1063 (11th Cir. 1986), we determined that for 1976 and 1977 the $ 125 weekly allowance paid Robert by the church represented taxable income. In Pollard, we specifically rejected Robert's claim the allowance was excludable from income under section 107 noting that, in addition to the allowance, the church paid directly the expenses of Robert and his wife's residence, furnishings and utilities. Ronald, on his 1975 and 1976 returns, reported receiving income totalling over $ 4,000 from the church and the school run by the church. Nothing in the record before us would lead us to believe that the items in question should have a different treatment than that afforded them in the earlier years. Petitioners apparently believed that they could avoid a determination of their taxable income by not producing any records or documentation *485 of the income paid to them. They assert that they maintained no books or records. The church refused to comply with a duly served subpoena to produce any documents concerning petitioners' income. As a result of an order granting respondent's motion to compel production of documents with which there was no compliance, this Court entered an order prohibiting petitioners from offering any evidence concerning payments made to them by the church. Petitioners' failure to cooperate leads us to conclude that such evidence, if produced, would have been unfavorable to their case. See Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Neither of the positions offered by the parties can be accepted in its entirety. Doing the best we can on the record presented and bearing heavily against petitioners because this inexactitude is of their own making ( Cohan v. Commissioner39 F.2d 540 (2d Cir. 1930)), we find that petitioners had the following amounts of unreported taxable income: Unreported
Petitioner
Year
Taxable Income
Robert
1978
$ 6,500.00
1979
6,500.00
1980
7,800.00
1981
7,800.00
1982
9,100.00
1983
9,100.00
Ronald
1977
5,200.00
1978
5,200.00
1979
5,200.00
1980
5,200.00
1981
5,200.00
1982
5,200.00
1983
5,200.00
*486 We have arrived at the above amounts of unreported income based on the 1977 weekly allowance paid Robert by Calvary Temple, with an increase in latter years for inflation. The weekly adjusted allowance amounts used are: (1) $ 125 in 1978 and 1979, (2) $ 150 in 1980 and 1981 and (3) $ 175 in 1982 and 1983. In so doing, we note that the opinion of this Court in Pollard v. Commissioner, supra, was filed on October 4, 1984, i.e., subsequence to the close of the years in issue. We think it likely that the church or its congregation would have continued to pay or provide petitioners such an allowance during the years in issue. In Ronald's case, while the record is silent as to whether he was ever paid a weekly allowance, we believe he would have earned income from either the church or the school approximating that earned by him in 1975 and 1976. We have not, however, determined an increase in Ronald's income during the years in issue. Ronald on his earlier years' returns listed his occupation as teacher, rather than minister. Teachers at the church's school were paid modestly. While Ronald's family included three young children, there was testimony that considerable *487 support was furnished to him for himself and his family by his wife's parents. Additions To Tax
Respondent in his notices of deficiency determined that petitioners are liable for various additions to tax. Petitioners have the burden of proof on this issue. Rule 142(a). Petitioners' primary position is that they had no income to report and that there is no tax owed or underpayment for the years in issue on which to predicate any additions to tax. As discussed, we have rejected such contention. Petitioners alternatively contend that should this Court find to the contrary, no additions should be imposed because petitioners in good faith believed they had received only nontaxable gifts. We find each petitioner liable for additions to tax under section 6651(a)(1) for failure to file tax returns for all of his pertinent taxable years in issue. It is stipulated that neither petitioner filed returns. Neither petitioner has established that his failure to file was due to reasonable cause. On the contrary, on the record presented we believe that each intentionally failed to file notwithstanding knowledge of his duty to do so. Petitioners in earlier years filed returns reporting *488 income earned from either their church or their church's school. We also find each petitioner liable for additions to tax under section 6653(a)(1) for each year in issue. This includes additions to tax under section 6653(a)(2) for 1981, 1982 and 1983. The entire amount of each year's underpayment is attributable to negligence or intentional disregard of rules and regulations on the part of each petitioner. We previously have determined each to have had significant amounts of unreported income. Further, neither maintained or produced adequate records concerned his taxable income. Such significant omissions of income and failure to maintain adequate books and records are strong evidence of negligence. Lastly, we find each petitioner liable for additions to tax under section 6654 for all of his pertinent taxable years in issue. Neither made any payments of estimated tax. No evidence was offered that the church or the school as employer withheld tax from any payments made during the years in issue. Petitioners have not established that any of the exceptions provided under section 6654(d) are applicable. Decisions will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as in effect during the years in issue. All Rules references are to the Tax Court Rules of Practice and Procedure. ↩
2. Respondent also determined that each petitioner Robert E. McCurry and Ronald J. McCurry is liable for additions to tax under section 6653(a)(2) for the taxable years 1981, 1982 and 1983. ↩