# United States Tax Court

T.C. Memo. 2023-11

CALVIN A. LIM AND HELEN K. CHU,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 14015-20.                                Filed January 23, 2023.

————

*Scott B. Burkholder*, for petitioners.

*Samuel M. Warren*, *Sarah A. Herson*, and *Paulmikell A. Fabian*, for respondent.

## MEMORANDUM OPINION

LAUBER, *Judge*: This case involves petitioners' Federal income tax liabilities for 2016 and 2017. Currently before the Court is a Motion for Partial Summary Judgment filed by the Internal Revenue Service (IRS or respondent) concerning petitioners' entitlement to charitable contribution deductions. Petitioners allegedly donated to a charitable organization, at yearend 2016, units in a recently formed limited liability company (LLC). They claimed for this alleged gift a deduction of $1,608,108 for 2016, which generated a carryforward deduction of $415,711 for 2017. The IRS contends that these deductions were properly disallowed for two reasons: (1) petitioners did not in fact donate any LLC units to the charity during 2016 and (2) petitioners failed to satisfy the substantiation requirements of section 170(f) and the

[*2] regulations promulgated thereunder.[1]  We will grant the Motion to the extent set forth in this Opinion.

## *Background*

The following facts are derived from the pleadings, the parties' Motion papers, and the Exhibits and declarations attached thereto. They are stated solely for the purpose of deciding respondent's Motion and not as findings of fact in this case.  *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). Petitioners resided in California during the tax years at issue and when they timely petitioned this Court.

During 2016 and 2017 petitioners were the sole shareholders of Integra Capital Group, Inc. (Integra).  Integra was an S corporation doing business in California, with a business address in Irvine, California. Petitioners served as Integra's officers and were also its employees.

## I.    *The "Ultimate Tax Plan"*

On December 22, 2016, Michael L. Meyer, an attorney, made a presentation to petitioners regarding a scheme he called "The Ultimate Plan: the Ultimate Tax, Estate and Charitable Plan."  That same day petitioners executed an engagement agreement with Mr. Meyer.  He thereby agreed to form a "Charitable Limited Liability Company" (CLLC) as a charitable giving vehicle.  He agreed to create documents that would transfer assets to the CLLC, to create documents that would transfer CLLC units to a charity, and to supply an appraisal supporting the valuation claimed for the gift.  He also agreed to represent petitioners before the IRS and this Court if the tax return on which petitioners reported the gift was selected by the IRS for examination.

### A.    *Mr. Meyer's Fee Pursuant to the Engagement Letter*

The engagement letter specified that Mr. Meyer's fee would be the greater of $25,000 or an amount calculated by reference to the assets transferred to the CLLC.  In the latter case, his fee was defined as 6% of the "deductible amount" of assets up to $1 million, plus 4% of the "deductible amount" of assets exceeding $1 million.  The engagement letter

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]** contemplated that the assets transferred to the CLLC would be five promissory notes with an aggregate face amount of $2,008,500. Copies of the promissory notes were attached to the engagement letter.

The engagement letter stated that "the total fee assessed will be USD$84,000.00, which will be payable in installments over a six month period" beginning January 2017. The agreement thus presupposed that the "deductible amount" of assets transferred to the CLLC would be $1,600,000 (6% × $1,000,000 + 4% × $600,000 = $84,000). It is not clear how Mr. Meyer knew, on December 22, 2016, that the assets would be appraised at $1,600,000. As described below, his "appraisal" reaching that conclusion was dated January 31, 2017.

B.    *Formation of CLLC*

That same day Mr. Meyer created ABC Foundation Legacy, LLC (ABC), as the CLLC for the "Ultimate Tax Plan." ABC was a single-member LLC incorporated in Indiana. Mr. Meyer listed himself as ABC's registered agent.

On December 30, 2016, petitioners and Integra executed with respect to ABC an agreement prepared by Mr. Meyer (ABC agreement). The ABC agreement named petitioners as ABC's managers, Integra as ABC's single member, and Mr. Meyer as its registered agent. Attached to the ABC agreement were the five promissory notes referenced in the engagement letter. Each note is dated December 31, 2016. By these notes petitioner wife, as payor, promised to pay ABC a total of $2,008,500 in seven years. Petitioner wife signed each note as payor, and both petitioners signed each note (on behalf of ABC) as payees.

C.    *Purported Charitable Donation*

The charitable recipient under the "Ultimate Tax Plan" was to be the Indiana Endowment Foundation, Inc. (Foundation). The Foundation was an Indiana corporation incorporated on June 2, 2016. Mr. Meyer's name does not appear on the certificate of incorporation. However, he is listed as the Foundation's "registered agent" in a Business Entity Report filed in April 2017 with the Indiana secretary of state. Respondent does not dispute that the Foundation was recognized by the IRS as a section 501(c)(3) organization on December 31, 2016.

Petitioners assert that Integra, ABC's single member, donated "units" of ABC to the Foundation on December 31, 2016. But petitioners have supplied no evidence to establish that any property was actually

**[\*4]** transferred to the Foundation during that year. They have supplied no copies of the "units" allegedly donated. They have offered no explanation as to when or how these "units" were created or what physical form they took. They have supplied no transmittal letter, email exchange, or other form of communication documenting a transfer of property.

In his First Request for Admissions respondent asked petitioners to "[a]dmit that there are no transfer documents effecting a transfer of ABC Foundation Legacy LLC units to Indiana Endowment Foundation during the 2016 tax year." In response petitioners stated: "Deny for lack of information and knowledge after reasonable inquiry." Respondent also asked petitioners to "[a]dmit that there was no transfer of ABC Foundation Legacy LLC units to Indiana Endowment Foundation during the 2016 tax year." In response petitioners stated: "Deny for lack of information and knowledge after reasonable inquiry."

On March 15, 2022, we granted respondent's Motion to Compel Production of Documents, directing petitioners to provide (among other things) "complete copies of all transfer documents, certificates, account statements, and correspondence showing the transfer of ABC Foundation Legacy LLC units from or on behalf of petitioners and/or Integra to Indiana Endowment Foundation during the 2016 tax year." In response petitioners cited only one document as responsive to this request, stating: "The transfer of LLC units is documented in the acknowledgement letter from Indiana Endowment Foundation . . . dated January 1, 2017."

D.    *Purported Acknowledgment Letter*

The January 1, 2017, letter purports to be a "contemporaneous written acknowledgement of the contribution" within the meaning of section 170(f)(8)(A). The letter reads as follows:

> We received your non-cash donation of **one thousand (1,000) units** in **C&H FAMILY LLC** in **2016**. **Indiana Endowment Foundation, Inc.**, provided no goods or services to you in exchange for your contribution. Please allow this letter to serve as official receipt of your unrestricted gift of **1000 units** received in **2016**. Your support is greatly appreciated.

This document appears to be a form letter into which were input the taxpayer-specific items shown in bold. The letter is odd in several respects. First, it is not addressed to Integra, the alleged donor, at its

[*5] address in Irvine, California. Rather it is addressed to petitioner wife at petitioners' residence in Encinitas, California. Second, the letter does not bear the signature of an officer or employee of the Foundation, or of any human being. Rather, it is signed "Sincerely, **Indiana Endowment Foundation, Inc.**" The record does not disclose who prepared this letter. But the format—a form letter into which the taxpayer-specific items appear in bold font—is the same format used in other documents created by Mr. Meyer, including the "appraisal" discussed below.

The third and most suspect feature of the January 1, 2017, letter is that it does not refer to the property allegedly donated, viz., units of ABC. Rather, it refers to 1,000 units of "C&H Family LLC," which did not exist during 2016 or on January 1, 2017. No entity with that name existed until February 16, 2017, when ABC filed articles of amendment with the Indiana secretary of state changing its name to C&H Family LLC. Mr. Meyer signed that document as ABC's agent.

### E.     *Mr. Meyer's Invoice and Purported Appraisal*

On January 4, 2017, Mr. Meyer issued an invoice to petitioners calculating his fee as $84,000, as stated in the engagement letter. The premise for this calculation was that the "deductible amount" of assets to which the engagement letter referred was roughly $1.6 million. That "deductible amount" was based on a purported appraisal prepared by Mr. Meyer and dated January 31, 2017.

The January 31, 2017, document is captioned "Appraisal of the Fair Market Value of [the] LLC Interests of ABC" that were allegedly transferred to the Foundation on December 31, 2016. At that time, the only assets allegedly possessed by ABC were the five promissory notes executed by petitioner wife, showing ABC as the payee. Thus, the fair market value (FMV) of the LLC interests of ABC could be expected to approximate the value of the notes.

Mr. Meyer's purported appraisal has the legalistic form of an appraisal but none of the substance. Like the Foundation's supposed acknowledgment letter, it appears to be a form document into which taxpayer-specific items have been input in bold font. The appraisal is addressed to Integra, the alleged donor, at petitioners' residential address. It states (incorrectly) that ABC has "one (1) Manager," then states (ungrammatically) that the "Manager of the LLC is Helen Chu and Calvin Lim." It asserts that "LLC interests" were donated to the

[*6] Foundation in 2016, but it fails to specify, anywhere in the document, how many ABC units were donated. It recites that ABC's only assets were promissory notes, but it makes no attempt to value the notes and ignores the fact that they were not due for seven years. It assumes that the Foundation owned 100% of the ABC units on the valuation date, but it incoherently applies a discount for lack of control in determining the value of those units. After many pages of legalese, Mr. Meyer opined that the deductible value of ABC units allegedly donated to the Foundation on December 31, 2016, was $1,608,808.[2]

Mr. Meyer attached to his purported appraisal a one-page "certification" stating that his compensation as preparer "[was] not contingent on an action or event resulting from the analysis, opinions, or conclusions in, or the use of, this report." He averred that he had no "present or prospective interest or bias with respect to the parties involved," even though he had arranged the entire transaction for petitioners and was the registered agent for ABC. He attached a curriculum vitae stating that he was a certified public accountant (CPA), a certified valuation analyst (CVA), and a licensed attorney in Kentucky at that time.[3]

## II.    *Tax Return and IRS Examination*

Integra timely filed Form 1120S, U.S. Income Tax Return for an S Corporation, for 2016. Integra attached to its return a copy of Mr. Meyer's appraisal and Form 8283, Noncash Charitable Contributions, prepared and signed by Mr. Meyer. The Form 8283 described the donated property as "LLC units," without identifying the entity whose units were being contributed or the number of units contributed. It stated that Integra's basis in the donated property was $2,008,500—the face amount of the five promissory notes executed by petitioner wife—and incorrectly stated that Integra had acquired the LLC units by "purchase." It reported the "appraised market value" of the LLC units as $1,608,808.

---

[2] Mr. Meyer evidently rounded that number down to $1,600,000 in calculating his fee, given the formula in the engagement letter. *See supra* p. 3.

[3] Respondent contends that Mr. Meyer was not a licensed attorney in Kentucky and that he had let his CPA and CVA certifications lapse as of January 31, 2017. Petitioners question the timing of the lapse of Mr. Meyer's CPA license and contend that he is (and was during 2017) an attorney in good standing in Kentucky. These factual disputes are not material in deciding whether the engagement letter provided for a "prohibited appraisal fee" under Treasury Regulation § 1.170A-13(c)(6)(i). *See infra* pp. 11–12.

**[\*7]**    On their joint Federal income tax return for 2016 petitioners reported, among other deductions on Schedule A, Itemized Deductions, a noncash charitable contribution deduction of $1,608,808 passed through to them from Integra.  *See* § 1366(a)(1)(A).  Because that amount exceeded the maximum allowable deduction for 2016, *see* § 170(d)(1)(A), petitioners claimed a $1,195,073 deduction for 2016 and carried the balance forward.  They claimed a carryforward deduction of $415,711 on their 2017 return.

The IRS selected petitioners' 2016 and 2017 returns for examination.  On September 9, 2020, the IRS issued petitioners a timely notice of deficiency, disallowing the deductions at issue for lack of substantiation.  Petitioners timely petitioned this Court for redetermination.

III.    *Other Judicial Proceedings*

In 2018 the U.S. Department of Justice filed a complaint against Mr. Meyer, alleging that he promoted the Ultimate Tax Plan as a tax evasion scheme, advising clients to claim unwarranted Federal income tax deductions for charitable donations.  The Government asked that he be enjoined from promoting this scheme (or similar schemes) and that he be required to disgorge proceeds he derived.  Mr. Meyer eventually settled with the Government and agreed to a permanent injunction.

On April 26, 2019, the U.S. District Court for the Southern District of Florida entered a final judgment of permanent injunction against Mr. Meyer, holding that he had engaged in conduct penalizable under section 6700 by promoting the Ultimate Tax Plan to customers.  The court permanently enjoined him from promoting "the Ultimate Tax Plan or any plan or arrangement that is substantially similar."  He was also enjoined from engaging thenceforth in 13 specified tax-related activities, including preparation of Federal tax returns for clients and furnishing tax advice regarding charitable contributions.

The court ordered Mr. Meyer to supply the U.S. Department of Justice, within 30 days, "the names and addresses of all individuals and entities that participated in the Ultimate Tax Plan since January 1, 2010."  He was ordered to cause the Foundation and "any other tax-exempt entity that [he] controls (directly or indirectly) that accepted interests in Entities from individuals in connection with the Ultimate Tax Plan to assign the interests in the Entities back to the individuals who assigned, donated, contributed, or transferred those interests."  And he was ordered to cause the Foundation (and other entities he controlled)

[*8] to "provide an accounting of any funds remaining in their bank accounts, return the funds retained in their bank accounts in reverse chronological order to the individuals or Entities from which the funds originated, close all bank accounts, and dissolve."

Respondent alleges that Mr. Meyer, as directed by the permanent injunction, caused the Foundation to return funds to petitioners and to assign back to them any interests in ABC (renamed C&H Family LLC) that the Foundation possessed. Petitioners dispute this allegation. The record does not clearly establish whether Mr. Meyer has in fact returned property or cash to Integra or petitioners.

In May 2019 petitioners and Integra filed suit against Mr. Meyer, the Foundation, and other defendants in Orange County Superior Court. That case was dismissed in September 2019. The record does not clearly establish the circumstances surrounding this dismissal.

*Discussion*

I.   *Preliminary Matters*

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). We may grant summary judgment regarding an issue as to which there is no genuine dispute of material fact and a decision may be rendered as a matter of law. Rule 121(b); *Elec. Arts, Inc. v. Commissioner*, 118 T.C. 226, 238 (2002). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party (here petitioners). *Bond v. Commissioner*, 100 T.C. 32, 36 (1993); *Sundstrand Corp.*, 98 T.C. at 520. However, where the moving party properly makes and supports a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of such party's pleading," but must set forth specific facts, by affidavit or otherwise, showing that there is a genuine dispute for trial. Rule 121(d).

The IRS's determinations in a notice of deficiency are generally presumed correct. *Welch v. Helvering*, 290 U.S. 111, 115 (1933). The taxpayer bears the burden of proving entitlement to any deductions claimed and of substantiating the amounts of such deductions. Rule 142(a); *Hradesky v. Commissioner*, 65 T.C. 87, 90 (1975), *aff'd per curiam*, 540 F.2d 821 (5th Cir. 1976); *see INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992). Petitioners do not contend, and the evidence does

**[*9]** not establish, that the burden of proof as to any issue of fact shifts to respondent under section 7491(a).

II.     *Governing Legal Principles*

Section 170(a)(1) allows as a deduction any charitable contribution made within the taxable year.  If the taxpayer makes a charitable contribution of property other than money, the amount of the contribution is generally equal to the FMV of the property at the time of contribution.  *See* Treas. Reg. § 1.170A-1(c)(1).  "A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary."  § 170(a)(1).

The Secretary has prescribed extensive regulations governing the verification of noncash charitable contributions.  *See* Treas. Reg. § 1.170A-13.  In the case of a contribution of property (other than publicly traded securities) valued in excess of $5,000, the taxpayer must obtain a "qualified appraisal" of the property.  § 170(f)(11)(C).  The taxpayer must also attach to his return "such information regarding such property and such appraisal as the Secretary may require," which includes a fully completed appraisal summary on Form 8283.  *Id.*; Deficit Reduction Act of 1984, Pub. L. No. 98-369, § 155(a)(1)(B), 98 Stat. 494, 691; *see Costello v. Commissioner*, T.C. Memo. 2015-87, 109 T.C.M. (CCH) 1441, 1445; *Jorgenson v. Commissioner*, T.C. Memo. 2000-38, 79 T.C.M. (CCH) 1444, 1450; Treas. Reg. § 1.170A-13(c)(2).[4]  When a contribution of property is valued in excess of $500,000, the taxpayer must attach a copy of the qualified appraisal to his return.  § 170(f)(11)(D).

Section 170(f)(11)(G) provides that, in the case of a partnership or S corporation, the qualified appraisal requirements "shall be applied at the entity level."  We must therefore determine whether Integra met those requirements for its purported contribution of ABC units.

---

[4] The regulations provide that Form 8283 must include a description of the donated property "in sufficient detail . . . for a person who is not generally familiar with the type of property to ascertain that the described property is the contributed property."  Treas. Reg. § 1.170A-16(d)(3)(iv)(B).  Respondent contends that the Form 8283 prepared by Mr. Meyer, which described the donated property as unidentified "LLC units," did not satisfy this requirement.  Respondent also contends that the "cost basis" of $2,008,500 shown on the Form 8283 is inaccurate.  *See* Treas. Reg. § 1.170A-13(c)(4)(ii)(D) and (E) (requiring that a Form 8283 disclose the cost or adjusted basis of the donated property).  Given our disposition, we need not decide whether these alleged failures would constitute an independent ground for disallowing the charitable contribution deductions.

**[*10]** III.  *Analysis*

A.  *Purported Donation*

Section 170(a) allows a deduction for a charitable contribution "payment of which is made within the taxable year." The amount of the contribution must be "actually paid during the taxable year." Treas. Reg. § 1.170A-1(a). To show that "payment" of the claimed contribution was made during the taxable year, a taxpayer must establish that he or she surrendered dominion and control over the property allegedly contributed. *See Pollard v. Commissioner*, 786 F.2d 1063, 1067 (11th Cir. 1986), *aff'g* T.C. Memo. 1984-536; *Glynn v. Commissioner*, 76 T.C. 116, 121–22 (1981), *aff'd without published opinion*, 676 F.2d 682 (1st Cir. 1982); *Strandquist v. Commissioner*, T.C. Memo. 1970-84, 29 T.C.M. (CCH) 387, 396 (noting that "charitable contribution" as used in section 170(a)(1) is synonymous with the term "gift"). Petitioners must therefore establish that Integra transferred to the Foundation during 2016, and that they and Integra relinquished control over, the ABC "units" for which they claimed a charitable contribution deduction.

Petitioners have conceded that they have no evidence to establish a physical transfer of property to the Foundation during 2016. They have supplied no copies of the "units" allegedly donated. They have offered no explanation as to when or how these "units" were created or what physical form they took. They have supplied no transmittal letter, email exchange, or other form of communication documenting an actual transfer of property.

To support their assertion that ABC units were transferred to the Foundation during 2016, petitioners rely solely on the purported "acknowledgment letter" allegedly issued by the Foundation on January 1, 2017. But this letter suffers from several obvious defects. It is not addressed to Integra, the alleged donor, at its address in Irvine but to petitioner wife at her residence in Encinitas. The letter does not bear the signature of an officer or employee of the Foundation but is signed "Sincerely, **Indiana Endowment Foundation, Inc.**" The format of the letter—a form letter into which the taxpayer-specific items appear in bold font—suggests that it may have been prepared by Mr. Meyer, not by the Foundation.

Most critically, the January 1, 2017, letter fails to describe any property that existed on that date or during the 2016 tax year. The letter recites that the Foundation received during 2016 "one thousand

**[\*11]** (1,000) units in C&H Family LLC." But no such entity existed until February 16, 2017, when ABC filed articles of amendment changing its name to C&H Family LLC. The Foundation could not have acknowledged receipt, on January 1, 2017, of property that did not exist on that date.

For these reasons, we conclude that petitioners would face a decidedly uphill task in attempting to prove that Integra actually transferred ABC units to the Foundation during 2016. However, viewing all facts in the light most favorable to petitioners, as we must at the summary judgment stage, we conclude that respondent is not entitled to judgment as a matter of law on this ground.

B. *Qualified Appraisal*

Section 170(f)(11) disallows a deduction for certain noncash charitable contributions unless specified substantiation and documentation requirements are met. In the case of a contribution of property valued in excess of $500,000, the taxpayer must obtain and attach to his return "a qualified appraisal of such property." § 170(f)(11)(D). An appraisal is "qualified" if it is "conducted by a qualified appraiser in accordance with generally accepted appraisal standards" and meets requirements set forth in "regulations or other guidance prescribed by the Secretary." § 170(f)(11)(E)(i).

An appraisal is "qualified" only if it is "prepared, signed, and dated by a qualified appraiser." Treas. Reg. § 1.170A-13(c)(3)(i)(B). The regulations specify 11 categories of information that a "qualified appraisal" must include, e.g., a description of the property and its physical condition, the date of the appraisal and the expected contribution, the method of valuation used to determine FMV, and the qualifications of the appraiser including his "background, experience, education, and membership, if any, in professional appraisal associations." *See id.* subdiv. (ii).

Respondent contends that Mr. Meyer's appraisal, for numerous reasons, was not a "qualified appraisal." Respondent urges that Mr. Meyer could not be a "qualified appraiser" because he was "[a] party to the transaction" in which Integra allegedly transferred ABC units to the Foundation. *See id.* subpara. (5)(i), (iv)(B). Respondent contends the appraisal cannot be "qualified" because it did not disclose the number of ABC units transferred and because Mr. Meyer misrepresented his qualifications. *See id.* subpara. (3)(ii)(A) (requiring "[a] description of the

[*12] property in sufficient detail"); *id.* subdiv. (ii)(F) (requiring a list of "[t]he qualifications of the qualified appraiser who signs the appraisal"). And respondent contends that Mr. Meyer's appraisal cannot be "qualified" because he prepared it in exchange for a "prohibited appraisal fee." *See Campbell v. Commissioner*, T.C. Memo. 2020-41, 119 T.C.M. (CCH) 1266, 1271; Treas. Reg. § 1.170A-13(c)(3)(i)(D).

We find that we need address only the last of these arguments in order to decide the qualified appraisal issue. The regulations provide that "no part of the fee arrangement for a qualified appraisal can be based, in effect, on a percentage (or set of percentages) of the appraised value of the property." Treas. Reg. § 1.170A-13(c)(6)(i); *see Alli v. Commissioner*, T.C. Memo. 2014-15, 107 T.C.M. (CCH) 1082, 1087 n.14. We agree that Mr. Meyer's fee was a prohibited appraisal fee within the meaning of this regulation.

The engagement letter specified that Mr. Meyer's fee would be the greater of $25,000 or an amount calculated by reference to the assets transferred. In the latter case, his fee was defined as 6% of the "deductible amount" of assets up to $1 million, plus 4% of the "deductible amount" of assets exceeding $1 million. The engagement letter further specified that Mr. Meyer's fee would be $84,000, which presupposes that the "deductible amount" of the assets transferred would be $1,600,000. That was the value (rounded down from $1,608,808) at which Mr. Meyer appraised the ABC units allegedly transferred to the Foundation. Mr. Meyer's fee was thus "based, in effect, on a percentage (or set of percentages) of the appraised value of the property." *See* Treas. Reg. § 1.170A-13(c)(6)(i). The regulations unambiguously designate Mr. Meyer's fee arrangement as a prohibited appraisal fee, and his appraisal therefore cannot be a "qualified appraisal."

Petitioners do not dispute that Mr. Meyer's fee ($84,000) was calculated as a percentage of the appraised value he placed on the ABC units allegedly donated to the Foundation (roughly $1,600,000). But they note that the engagement letter defined the "deductible amount" by reference to "the net total assets *transferred to the CLLC* . . . calculated upon the date of the transfer." The assets transferred to the CLLC—i.e., to ABC—were the five promissory notes executed by petitioner wife with a face amount of $2,008,500. Petitioners assert that Mr. Meyer appraised the promissory notes, not the ABC units, and hence that his fee was not a prohibited fee.

**[*13]** This argument does not pass the straight-face test. First, Mr. Meyer did not appraise the promissory notes. His appraisal contains no discussion of the factors that would affect the FMV of the notes, e.g., the seven-year term, the specified interest rate, prevailing market interest rates, and petitioners' creditworthiness. His appraisal is explicitly captioned, "Appraisal of the Fair Market Value of [the] LLC Interests of ABC." That he was appraising ABC units, not promissory notes, is plain from his methodology (if it can be called that). He reached his valuation conclusion by applying discounts for lack of control and lack of marketability, which he derived from closed-end investment funds. This is not how one would value promissory notes.

In any event, we would reach the same conclusion even if Mr. Meyer had appraised the promissory notes. ABC was a paper corporation on December 31, 2016. It had no assets apart from the five notes executed by petitioner wife, and it had no liabilities. The value of ABC— before applying any discounts—was thus equal to the value of the notes. If Mr. Meyer had appraised the notes, he would in effect have been determining the value of the ABC units. The regulations explicitly cover this scenario, because they prohibit any fee arrangement "based, *in effect*, on a percentage (or set of percentages) of the appraised value of the property." Treas. Reg. § 1.170A-13(c)(6)(i) (emphasis added).

In sum, Mr. Meyer's fee was clearly based, directly or indirectly, on the appraised value of the ABC units allegedly donated to the Foundation on December 31, 2016. His agreement with petitioners thus constituted a prohibited fee arrangement. For that reason alone, his purported appraisal was not a "qualified appraisal" within the meaning of section 170(f)(11)(D).

C.    *Reasonable Cause*

Section 170(f)(11)(A)(ii)(II) excuses failure to satisfy the substantiation requirements of section 170, including requirements related to qualified appraisals, if "it is shown that the failure to meet such requirements is due to reasonable cause and not to willful neglect." This "reasonable cause" defense may enable a taxpayer to avoid disallowance of a charitable contribution deduction. *See Belair Woods, LLC v. Commissioner*, T.C. Memo. 2018-159, 116 T.C.M. (CCH) 325, 330. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. Treas. Reg. § 1.6664-4(b)(1); *see Belair Woods*, 116 T.C.M (CCH) at 330 (explaining that this "reasonable cause" defense

**[*14]** has been construed similarly to the reasonable cause defense that relieves a taxpayer from the imposition of penalties).

Petitioners assert that they relied on the advice of Thomas Monaghan, a CPA, and Jeffrey M. Verdon, an attorney, regarding the appropriateness of the charitable contribution deductions at issue. Conceivably, petitioners may be able to show that they received, and reasonably relied on, professional advice specifically directed to the "qualified appraisal" issue. Because the existence of such advice (if any) and the reasonableness of petitioners' reliance would involve disputes of material fact, we find that the availability of a "reasonable cause" defense would require the presentation of evidence at trial.

To reflect the foregoing,

*An order will be issued granting in part and denying in part respondent's Motion for Partial Summary Judgment.*