WILLIAM C. WHITE and KATHLEEN J. WHITE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
White v. Commissioner
Docket No. 4136-78.
United States Tax Court
T.C. Memo 1981-147; 1981 Tax Ct. Memo LEXIS 592; 41 T.C.M. (CCH) 1180; T.C.M. (RIA) 81147; March 30, 1981. John K. Cotter, for the petitioners. Alan Summers, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in the joint Federal income taxes of William C. White and Kathleen J. White for calendar years 1974 and 1975 in the amounts of $ 6,001.54 and $ 5,769.46, respectively, and additions to tax under section 6651(a), I.R.C. 1954, [1] for these respective years in the amounts of $ 1,214 and $ 1,335.76. [2]
Some of the issues raised by the pleadings have been disposed of, leaving for decision: (1) whether in reporting their gross income for 1974 and 1975 petitioners may exclude their wages earned in those years, and (2) whether petitioners are liable for an addition *594 to tax under section 6651(a) for failure to timely file their 1974 return. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. William C. White and Kathleen J. White, husband and wife, resided in Los Altos, California, at the time of filing their petition in this case. They signed their joint Federal income tax return for calendar year 1974 on November 4, 1975, and the Internal Revenue Service Center at Fresno, California, received the return on November 7, 1975. For calendar year 1975, petitioners timely filed a joint Federal income tax return Form 1040A with the Internal Service Center, Fresno, California. In September 1971 petitioners moved to Los Altos, California. The purpose of this move was to enable Mr. White to accept employment at Stanford University as a computer scientist. He continued this employment throughout the years here in issue. Mrs. White at the time was employed as a flight attendant for Pan American World Airways (Pan Am) and after the move and throughout the years here in issue she continued to work as a flight attendant for Pan Am. During the years there in issue Standard University and Pan Am directly paid petitioners *595 their respective wages. In 1972 or 1973 Mr. White became involed with the Universal Life Church. Through his associations in the Universal Life Church he learned of the Free Trinity Christian Church (Church). At some time during the first 3 months of 1974 Mr. White joined the Church and thereafter became a minister in accordance with Church procedures. At approximately the same time Mrs. White joined the Church, but she did not become a minister until sometime later in that year. In or about February 1970 the Church received a favorable ruling from the Internal Revenue Service that it qualified as an exempt organization under section 501(c)(3). In accordance with the procedures of the Church, a Church member could be ordained as a minister only by God and not by man. Therefore once an individual perceived himself as having been ordained as a minister of God, the Board of Elders of the Church recognized the individual as a minister of the Church. No formal religious instruction was required prior to ordination. After ordination petitioners did not engage in any formal religious training. During 1974 and 1975 petitioners participated in some discussion groups and had a *596 number of religious-related discussions with individuals. Several weeks after joining the Church, Mr. White and Mrs. White took vows of poverty to the Church. Petitioners did not revoke their vows of property until their departure from the Church in 1976, at which time they formed a new church. Prior to joining the Church petitioners purchased in their names a house in Los Altos, California. Throughout 1974 and 1975 petitioners continued to live in their home. Petitioners also owned two automobiles in their names both before and after joining the Church. They used the cars to commute to work as well as to transport them to homes of friends and relatives. In 1974 and 1975, as in prior years, petitioners maintained savings and checking accounts in their own names. Petitioners deposited their wages into these bank accounts. They withdrew money from and wrote checks on these accounts for such living expenses as food, clothing, real estate taxes, gasoline, and utilities. They also paid for their vacations from funds in these accounts. During the years in issue petitioners met approximately once a month with the Board of Elders of the Church. The Board of Elders was composed *597 of three Church members. The discussions with the Board of Elders often included the recounting of some of the individual discussions petitioners had engaged in with other persons. Additionally, approximately once a year petitioners would indicate to the Board of Elders the amount of money which they had expended from their personal bank accounts. Petitioners attached to their joint Federal income tax returns for 1974 and 1975 the W-2 statements that they had received from their employers. The W-2 statements from Stanford University showed that Mr. White had earned $ 13,614.73 in 1974 and 13,087.73 in 1975. The W-2 statements from Pan Am indicated that Mrs. White had earned $ 14,767.50 in 1974 and $ 13,483 in 1975. On line 9 of their 1974 and 1975 joint Federal income tax returns, which line should indicate the amount of wages, salaries, tips, and other employee compensation received, petitioners placed a zero. In reference thereto petitioners stated that "[A]ll wages listed on forms W-2 were excepted from wages according to 26 CFR 31.3401(a)(9)." In adjusting petitioners' reported gross income, respondent stated that-- It is determined that the amounts of $ 28,382.23 *598 for the year ended December 31, 1974 and $ 28,570.73 for the year ended December 31, 1975 received for the performance of services constitutes income. Accordingly, these amounts are added to your taxable income. Further, respondent indicated that petitioners were liable for payment of an addition to tax under section 6651(a). In explaining this addition to tax for the year 1974, respondent stated in the deficiency notice: Section 6651(a) Delinquency Penalty
1. Tax liability as determined-per schedule 1,
$ 6,001.54
line 12
2. Less income tax withholding applied to tax
$ 1,145.55
liability
3. Net tax liability
$ 4,855.99
4. Delinquency penalty-25% of above
$ 1,214.00
OPINION Section 61(a) defines gross income as "all income from whatever source derived * * *." Unless Congress has specifically exempted certain earned and unearned income from inclusion in the computation of gross income, the broad language of section 61(a) requires its inclusion. Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 (1955). Therefore the wages earned and received by petitioners during calendar years 1974 and 1975 are includable in their gross income *599 and subject to income tax unless excludable under some specific statutory provision. Petitioners argue that because they were acting as agents of the Church when they earned and received the wages in issue, they need not report these earnings as a portion of gross income. The essence of petitioners' argument is that they were mere instruments of the Church. Petitioner contend that in 1974 and 1975 they were subject at all times to vows of poverty, and that the Church owned and controlled all of petitioners' properties, funds and actions. They assert that the Board of Elders ordered petitioners to remain employed in the civilian positions which they held prior to joining the Church. As such, petitioners take the position that the wages earned from their jobs with Stanford University and Pan Am were paid to them directly as a matter of administrative simplicity. Otherwise, because the Church was allegedly the owner of all of petitioners' funds and reputedly responsible for payment of petitioners' living expenses, the wages would have to be paid to the Church and the Church would have to return a portion of the earnings to petitioners as a living allowance. Respondent argues that *600 petitioners are attempting to assign their right to their earned income to the Church without payment of their Federal income tax liability on those amounts. We agree with respondent. Petitioners have the burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering, 290 U.S. 111 (1933). The position that petitioners take is not supported by the facts. Petitioners allegedly took an oral as well as a written vow of poverty to the Church in 1974. Nonetheless, subsequent to taking this vow of poverty, petitioners continued to live in the same manner in which they had lived prior to taking the vow. Prior to the vows petitioners purchased a home in their names; after the vows petitioners continued to live in the home and to pay the real estate taxes thereon. Petitioners did not deed the house to the Church. Prior to the vows petitioners had checking and savings accounts in their own names; subsequent to the vows, the accounts remained in petitioners' names and petitioners were the only persons authorized to draw from the accounts. After the vows petitioners withdrew moneys for their general living expenses and vacations from their *601 personal bank accounts, just as they had done prior to taking the vows. There was no limitation imposed by the Church on petitioners' use of their earnings. Before taking the vow, Mr. White worked as a computer scientist at Stanford University and Mrs. White was employed by Pan Am as a flight attendant; each was paid directly for those services rendered. After the vow petitioners remained at their same jobs fulfilling the same job responsibilities; each received their monetary compensation in the same manner as previously. Prior to the vows, petitioners did not proselytize during work hours, nor did they proselytize during work hours after taking the vows. In sum, the Church did not exercise control over petitioners' assets or actions. To any extent that petitioners might have been subject to vows of poverty, the effect of the vows were nullified upon leaving the Church. This proved to be the case when petitioners left the Church in 1976. At that time petitioners merely retained all personal and real property that they had possessed prior to joining the Church as well as the property they had acquired while members of the Church. Petitioners were not obligated to the Church nor *602 was the Church obligated to petitioners as a result of petitioners' decision to withdraw as members. There is no evidence in the record that petitioners actually gave the Church definite sums from their earnings. Even if petitioners had introduced evidence indicating that funds had been given to the Church, they could not prevail. It is apparent that petitioners performed their services for Stanford University and Pan Am in their individual capacities and not on behalf of the Church. Neither of the two employers negotiated with the Church to obtain services from the Church, its followers, or petitioners in particular. Therefore, petitioners' agency argument is without merit. See Lucas v. Earl, 281 U.S. 111 (1930); Kelley v. Commissioner, 62 T.C. 131 (1974). Petitioners also argue that to deny them the opportunity to exclude their wages from reportable gross income would violate their First Amendment rights. Petitioners assert that the First Amendment protects not only orthodox religious beliefs and practices but also untraditional religious beliefs and practices. They contend that section 3401(a)(9) [3] reflects a permissive intent of the *603 First Amendment to the United States Constitution by allowing ordained ministers to exclude from gross income those wages received for the performance of services and by permitting members of a religious order to exclude from gross income those earnings received as a result of the performance of duties required by the order. Petitioners totally misinterpret section 3401(a)(9). This section does not deal with the inclusion in or exclusion of amounts from gross income or from taxable income of a minister or member of a religious order. Section 3401(a) defines the term "wages" only for purposes of Chapter 24 dealing *604 with "Collection of Income Tax at Source on Wages." Section 3401(a)(9) exempts an employer from the withholding of tax on amounts paid to a minister for services in the exercise of his ministry and amounts paid to a member of a religious order for services required by that order. This section does not deal with the taxability of compensation for services paid to a minister or a member of a religious order. Amounts received by ministers and members of a religious order for services are includable in their gross income under section 61 and constitute taxable income unless excluded by some specific provision of the Code. Section 3401(a)(9) is not such a provision. Also, as we have previously pointed out, the wages earned by petitioners from Stanford University and Pan Am were not for services as ministers or members of a religious order. Therefore they do not come within the provisions of section 3401(a)(9) even for the purpose of having these wages excluded from withholding by their employers. See McGahen v. Commissioner, 76 T.C.     (Mar. 26, 1981). There is nothing in the First Amendment to support petitioners' contention in this case. It is well settled that the First *605 Amendment right to the free exercise of religion is not absolute. Indirect and incidental burdens thereon are constitutionally proper. Southern Church of Brotherhood v. Commissioner, 74 T.C. 1223, 1228-1229 (1980), and cases there cited. As pointed out in United States v. Holmes, 614 F.2d 985, 989 (5th Cir. 1980): Free exercise of religion, as it is encapsulated in the First Amendment, embraces two concepts--freedom to believe and freedom to act. The first is absolute, but the second remains subject to regulation for the protection of society. Cantwell v. Connecticut, 310 U.S. 296, 303-04, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940). In the instant case petitioners are free to espouse their religious beliefs and solicit support for their causes. The taxation of the wages earned by petitioners in carrying out the responsibilities of their jobs as computer scientist and flight attendant do not in any manner hinder petitioners' freedom of religious belief. See Christian Echoes National Ministry, Inc. v. United States, 470 F.2d 849, 857 (10th Cir. 1972). In short, we conclude that there is no merit to petitioners' *606 arguments. Petitioners are liable for payment of tax on their 1974 and 1975 wages earned in the performance of their jobs at Stanford University and Pan Am. Respondent determined that petitioners are liable for an addition to tax with respect to calendar year 1974 because of their failure to timely file their 1974 joint Federal income tax return. Petitioners' 1974 income tax return was signed on November 4, 1975, and the Internal Revenue Service received the return on November 7, 1975. No extension of time had been granted to petitioners. Section 6651(a)(1) provides that where a taxpayer fails to timely file-- unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate; It is well settled law that where a tax return is mailed after its due date, here April 15, 1975, it is deemed filed on the date of receipt by the Internal Revenue *607 Service, here November 7, 1975. Petitioners' 1974 return was filed more than 5 months after its due date. Petitioners have totally failed to show that the late filing of their return was due to reasonable cause and not to willful neglect. They are therefore liable for the addition to tax under section 6651(a)(1) as determined by respondent. Because of concessions made by the parties, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue, unless otherwise stated. ↩
2. On brief respondent conceded that petitioners were not liable for the addition to tax under section 6651(a)↩ for the year 1975.
3. Sec. 3401(a)(9) provides: (a) Wages.--For purposes of this chapter, the term "wages" means all remuneration (other than fees paid to a public official) for services performed by an employee for his employer, including the cash value of all remuneration paid in any medium other than cash; except that such term shall not include remuneration paid-- (9) for services performed by a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry or by a member of a religious order in the exercise of duties required by such order; * * *↩