T.C. Memo. 2020-92

UNITED STATES TAX COURT

JAMES A. LLOYD, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12309-17.                    Filed June 22, 2020.

P operated several Bible-focused websites and internet-based radio stations and sold merchandise over the internet. He neither filed income tax returns nor paid any income tax. P's principal argument is that the income tax law is null and void; alternatively, he argues that he is entitled to a religious exemption from paying income tax because he is functioning as a church.

<u>Held</u>: The income tax law contains no exemption for an individual functioning as a church.

<u>Held</u>, <u>further</u>, P is liable for income tax.

<u>Held</u>, <u>further</u>, P is liable for self-employment tax.

<u>Held</u>, <u>further</u>, P is liable for additions to tax for failures to timely file returns and failures to timely pay tax.

<u>Held</u>, <u>further</u>, on its own motion, the Court will sanction P because his position that the income tax law is null and void is frivolous.

[*2]   James A. Lloyd, pro se.

Erik W. Nelson, Randall G. Durfee, and Nhi T. Luu, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


HALPERN, Judge:  Respondent determined deficiencies in, and additions to, petitioner's Federal income tax as follows:[1]

|       |            | Additions to tax | | |
| Year | Deficiency | Sec. 6651(a)(2) | Sec. 6651(f)[1] | Sec. 6654 |
| --- | --- | --- | --- | --- |
| 2005 | $102,978 | $25,745 | $74,659 | $4,131 |
| 2006 | 78,547 | 19,637 | 56,947 | 3,717 |
| 2007 | 87,638 | 21,910 | 63,538 | 3,989 |
| 2008 | 103,683 | 25,921 | 75,170 | 3,332 |
| 2009 | 78,713 | 19,678 | 57,067 | 1,885 |
| 2010 | 69,058 | 17,265 | 50,067 | 1,481 |

[1]Alternatively, respondent determined that petitioner is liable for additions to tax under sec. 6651(a)(1) if we conclude that he is not liable for additions to tax under sec. 6651(f).

After concessions detailed infra, the issues for decision are whether petitioner is:  (1) taxable on proceeds he received from an internet sales business,

_____

[1]All section references are to the Internal Revenue Code (Code) of 1986, as amended for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all dollar amounts to the nearest dollar.

[*3] (2) liable for self-employment tax, and (3) liable for the additions to tax. On our own motion, we also decide to sanction petitioner for maintaining a frivolous or baseless position.

## FINDINGS OF FACT

The parties have stipulated certain facts and the authenticity of certain documents. The facts stipulated are so found, and documents stipulated are accepted as authentic. Petitioner resided in Oregon when he filed the petition. He was not married during any of the years at issue.

Petitioner's Tax Filings and Payments

For none of the years at issue did petitioner file a Federal income tax return or pay any Federal income tax. Nor did he file a return for 2004.[2]

Christian Media Network

During the years at issue, petitioner operated several Bible-focused websites and internet-based radio stations (collectively, Christian Media Network). He operated the Christian Media Network himself, without employees or staff, and neither the Christian Media Network nor any of its components was organized as an entity separate from himself. He describes his role in relation to the Christian

---

[2]Whether petitioner filed a Federal income tax return for 2004 is relevant to the determination of his sec. 6654 obligation to make estimated tax payments for the first year here at issue, 2005.

[*4] Media Network as: "Pastor, prophet, leader, spokesperson." At trial, he agreed with respondent that, "in effect," he is "Christian Media."

Petitioner broadcast or distributed over the Christian Media Network a weekly sermon, Bible analyses, personal letters, and news reports. Subscribers had to pay for DVDs of videos or for hard copies of written materials. Petitioner sold other products and merchandise through the Christian Media Network, including books, pamphlets, periodicals, Bibles and concordances, health and survival products, videos, and DVDs. While some items could be received only in exchange for a donation, the donation was a fixed amount, and the items could not be obtained without the donation. Petitioner also advertised for sale on the Christian Media Network merchandise apparently produced by others, including Aqua Rain Filters, satellite dishes, and organic seeds.

Petitioner maintained a business checking account at KeyBank, account No. xxxxxx2386 (account 2386), in the name of "James Lloyd dba Christian Media". During the years at issue, he deposited into account 2386 the monies he received from sales through the Christian Media Network. Records of account 2386 show thousands of individual transactions during the years at issue, many involving relatively small amounts, i.e., $25 to $50. Petitioner withdrew amounts from account 2386 in order to pay his living expenses.

**[*5]** Petitioner also had accounts in his name with eBay and PayPal, through which he received monies from Christian Media Network sales. Petitioner testified that he had "complete independent discretion" of what to do with the monies in the three accounts (petitioner's accounts) and "[did not] answer to any temporal authority or individual, corporation, person, or other entity."

Reconstruction of Petitioner's Income

Because petitioner filed no returns for the years at issue, respondent initiated an investigation to determine whether he had failed to report income subject to tax.

Revenue Agent (RA) Rae J. Cook was charged with that investigation. As a first step, she requested from petitioner his financial records, which he did not provide. RA Cook then identified KeyBank, eBay, and PayPal as financial institutions with which petitioner did business and through which she believed he received monies from his operation of the Christian Media Network. She summoned (and received) records relating to petitioner from each institution. Respondent provided to petitioner before trial copies of the records received. At trial, those records were received into evidence. RA Cook used the records to reconstruct petitioner's receipts from sales through the Christian Media Network. She identified sales receipts deposited into account 2386. She also identified sales proceeds received by way of eBay and PayPal. She disregarded payments into the

[*6] eBay account because those amounts duplicated payments into the PayPal account. She also disregarded payments into the PayPal account that were redeposited into account 2386.

From the records that she had summoned, RA Cook determined that petitioner received from sales through the Christian Media Network $405,955, $427,390, $446,855, $471,744, $339,856, and $311,145 for 2005 through 2010, respectively. Respondent equated those amounts to petitioner's gross receipts from sales for those years. During trial preparation respondent's counsel asked RA Cook to review the work she had done. She did so and revised her determinations of petitioner's gross receipts from sales as follows: $395,387, $393,172, $380,591, $359,495, $265,221, and $261,147 for 2005 through 2010, respectively.

In making her original calculations of petitioner's net income from sales, RA Cook allowed petitioner a deduction each year for expenses that she identified from his records as business expenses. She did not revise those amounts during her pretrial review. The amounts she allowed were as follows: $98,569, $187,548, $180,797, $159,738, $97,577, and $95,547 for 2005 through 2010, respectively.

During the years at issue, petitioner had no employment apart from his operation of the Christian Media Network. Petitioner has stipulated: "The money

[*7] received by petitioner during the years at issue arise from activities conducted through or in the name of the * * * [Christian Media Network]."

Substitutes for Returns

Because petitioner had made no returns, respondent prepared a so-called substitute for return (SFR) for each of the years at issue. Each SFR consists of an Internal Revenue Service (IRS) Form 13496, IRC Section 6020(b) Certification, with various additional forms, including an IRS Form 4549-A, Income Tax Examination Changes, and an IRS Form 5278, Statement--Income Tax Examination Changes, along with supporting documents. The Forms 13496 and 4549-A are signed by RA J. Michael Sumner, who completed the investigation of petitioner and relied on the work of RA Cook when he executed those forms. The SFRs reflect the amounts respondent initially determined as deficiencies and additions to tax.

Revised Deficiencies and Additions to Tax

Respondent determined that petitioner was liable for an addition to tax for each year under either section 6651(a)(1) (for failure to file a timely return) or section 6651(f) (which imposes an increased addition to tax when a taxpayer's failure to file is fraudulent). Respondent has since conceded that the section 6651(f) addition to tax does not apply.

[*8]   To reflect that concession and RA Cook's revisions to her determinations of petitioner's gross receipts, respondent has provided us with a revision of his determinations of deficiencies and additions to tax, as follows:

|  | | Additions to tax | | |
| --- | --- | --- | --- | --- |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 |
| 2005 | $99,254 | $22,332 | $2,481 | $3,981 |
| 2006 | 67,358 | 15,156 | 1,684 | 3,188 |
| 2007 | 63,885 | 14,374 | 1,597 | 2,908 |
| 2008 | 63,845 | 14,365 | 1,596 | 2,052 |
| 2009 | 53,293 | 11,991 | 1,332 | 1,129 |
| 2010 | 52,662 | 11,849 | 1,317 | 1,129 |

Trial of the Case

Trial of this case was conducted in Portland, Oregon, on December 11, 2018.  Opening and answering briefs were due on April 29 and June 13, 2019, respectively.

**[*9]**                                     OPINION

I.      Introduction

        A.      Parties' Arguments

                1.      Petitioner's Arguments

Petitioner's principal argument is that he has no income subject to tax

because the income tax law is "null[] and void".  In his own words:

> While there are many other issues, the fact is, regardless of all the
> many reasons to invalidate Respondent's claims against Petitioner,
> "income" and only "income" is used to calculate the amount of tax
> liability, if there is no "income" there is no liability.
>
>         * * * 26 USC/IRC [the Code] does not specifically define
> "income".  Why?
>
>         "Income" is not defined within the code because it cannot
> lawfully do so.  The legislature, the only law making body for the
> United States, is prevented from defining terms used within the
> United States Constitution as to do so would in reality amend the
> constitution in a way outside their authority to do so, thus it would be
> unlawful to do so.
>
>                 *       *       *       *       *       *       *
>
>         While the legislature cannot specifically define "income" they
> do define taxable income" as being "gross income" minus deductions.
> They then define "gross income" as "income," an unknown and
> undefinable from within the law.
>
>         Lacking a definition of "income" leaves 26 USC/IRC, by itself,
> as a vague, ambiguous, arbitrary and capricious law that is therefore a
> nullity and void from its inception.

[*10] Petitioner recognizes that Supreme Court authority may contradict his conclusion that the income tax is null and void: "The United States Supreme Court came to the rescue of the tax code." But, he continues: "The Supreme Court defines 'income' as something entirely distinct from principal or capital either as a subject of taxation or as a measure of the tax; conveying rather the idea of gain or increase arising from corporate activities." And that definition does not reach his activities because: "Petitioner recalls no 'gain' or 'profit' and nevertheless, * * * he certainly had not and is not involved in any corporate activity or franchise and therefore created no income."

Alternatively, if we do not agree with him that the Code is null and void or that the Supreme Court's definition of income does not encompass his activities, petitioner claims he is entitled to "a religious exemption to 'paying taxes'" because "he is functioning as a church": "In publicly functioning as a church, James Lloyd and the Christian Media ministry which he directs, are immune from Income Tax liability by the First Amendment of the United States Constitution."

Petitioner also contends that the SFRs are invalid because they were not affirmed under penalties of perjury. He objects to the self-employment tax determined by respondent and to the additions to tax.

**[*11]**       2.       Respondent's Arguments

Respondent argues that he properly reconstructed the income that petitioner received through Christian Media Network, that petitioner is, in effect, the Christian Media Network, and that he is not exempt from taxation on the income. Respondent also argues that he prepared proper SFRs and that petitioner is liable for self-employment tax and additions to tax. In both the answer and in his pretrial memorandum, respondent warned petitioner that he was making frivolous arguments in challenging the constitutionality of the Federal income tax system.

B.       Burden of Proof

Petitioner bears the burden of proof. See Rule 142(a).[3]

---

[3]This case involves unreported income, and barring stipulation to the contrary the venue for appeal is the Court of Appeals for the Ninth Circuit. See sec. 7482(b)(1)(A), (2). We are therefore bound by a line of cases of that Court of Appeals beginning with Weimerskirch v. Commissioner, 596 F.2d 358 (9th Cir. 1979), rev'g 67 T.C. 672 (1977), to which we defer in accordance with the doctrine of Golsen v. Commissioner, 54 T.C. 742 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971). E.g., Rodriguez v. Commissioner, T.C. Memo. 2009-92. The general rule established by that line of cases is that, for the Commissioner to prevail in a case involving unreported income, there must be some evidentiary foundation linking the taxpayer with the alleged income-producing activity. See Weimerskirch v. Commissioner, 596 F.2d at 362. Although Weimerskirch dealt specifically with illegal unreported income, it is now well established that the Court of Appeals applies the Weimerskirch rule in all cases of unreported income where the taxpayer challenges the Commissioner's determination on the merits. E.g., Edwards v. Commissioner, 680 F.2d 1268, 1270 (9th Cir. 1982) (stating, in a case involving unreported income from an income-generating auto repair business owned by the taxpayer: "We note, however, that the Commissioner's assertion of deficiencies are

(continued...)

**[\*12]** II.     Discussion

     A.     Unreported Income

        1.     Introduction

Section 1(c) imposes a tax on the taxable income of individuals.  Individuals receiving gross income in excess of certain minimum amounts are required to file income tax returns.  See sec. 6012(a)(1); sec. 1.6012-1(a), Income Tax Regs.  Section 61(a) defines gross income as "all income from whatever source derived".  Gross income includes business income, sec. 61(a)(2), and "[g]ains derived from dealings in property", sec. 61(a)(3).  The term "gross income" is construed broadly and extends to all accessions to wealth over which the taxpayer has complete dominion.  See Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955).  As the Supreme Court explained, a gain "constitutes taxable income when its

---

     ³(...continued)
[sic] presumptively correct once some substantive evidence is introduced demonstrating that the taxpayer received unreported income.  Weimerskirch v. Commissioner, 596 F.2d 358, 360 (9th Cir. 1979)."); Petzoldt v. Commissioner, 92 T.C. 661, 689 (1989) ("[T]he Ninth Circuit requires that respondent come forward with substantive evidence establishing a 'minimal evidentiary foundation' in all cases involving the receipt of unreported income to preserve the statutory notice's presumption of correctness.").  Petitioner acknowledges his operation of Christian Media Network, and there is evidence of his receipt of monies from his sale of items through the Christian Media Network.  Receipts from those sales are items of gross income, see sec. 61(a), and the omission of those receipts forms the basis for respondent's adjustments increasing petitioner's gross income.  Respondent has met his burden of showing sources for his adjustments increasing petitioner's gross income, and the burden of proof is on petitioner.

[*13] recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it." Rutkin v. United States, 343 U.S. 130, 137 (1952). "A taxpayer has dominion and control when the taxpayer is free to use the funds at will." Gardner v. Commissioner, T.C. Memo. 2013-67, at *12-*13 (citing Rutkin, 343 U.S. at 137), aff'd, 845 F.3d 971 (9th Cir. 2017). Gross income is reduced to taxable income by the subtraction of allowable deductions. See sec. 63(a).

Petitioner's argument that the income tax is null and void is devoid of merit, and we reject it summarily. We do so in mind of what the Court of Appeals for the Fifth Circuit said many years ago and reiterated earlier this year: "We perceive no need to refute these arguments with somber reasoning and copious citation of precedent; to do so might suggest that these arguments have some colorable merit." Williams v. Commissioner, 801 F. App'x 328, 329 (5th Cir. 2020) (quoting Crain v. Commissioner, 737 F.2d 1417, 1417 (5th Cir. 1984)); see also Wnuck v. Commissioner, 136 T.C. 498, 501 (2011); Wells v. Commissioner, T.C. Memo. 2019-134, at *5.

We proceed to consider respondent's reconstruction of petitioner's income and petitioner's argument that he is exempt from the income tax because he is functioning as a church.

[*14]     2.     Respondent's Reconstruction of Petitioner's Gross Income

Petitioner reported no income and filed no returns for any of the years at issue, nor did he cooperate with respondent's investigation of his income tax liability for those years.  When a taxpayer fails to maintain or produce adequate records, the Commissioner may reconstruct his income by using any reasonable means.  See, e.g., Petzoldt v. Commissioner, 92 T.C. 661, 693 (1989); Worth v. Commissioner, T.C. Memo. 2014-232, at *22, aff'd, 666 F. App'x 692 (9th Cir. 2016).  The specific-item method is a direct method of income reconstruction, which reconstructs income from evidence of specific receipts received by a taxpayer and not reflected on the taxpayer's return.  See Estate of Beck v. Commissioner, 56 T.C. 297, 353, 361 (1971).  To reconstruct petitioner's income for the years at issue, RA Cook summoned bank and financial records for petitioner from KeyBank, eBay, and PayPal.  She identified receipts reported in those records from petitioner's sales through the Christian Media Network.  She eliminated duplicate amounts and summed those receipts to determine petitioner's gross receipts for each year.  She estimated deductible expenses and subtracted those amounts to determine his net income from sales.

Petitioner has no serious challenge to the methodology or accuracy of respondent's reconstruction of his income.  Indeed, in response to respondent's

[*15] proposed findings of facts with respect to petitioner's financial activity and income, petitioner has a stock response: "Petitioner Objects to the financial figures as they are too voluminous to evaluate within any realistic time frame." That is not a claim that the figures are incorrect, only that petitioner has had inadequate time to evaluate them, a claim we do not believe. Petitioner had access to the KeyBank, eBay, and PayPal records at least by December 11, 2018, the date of trial, when the records were received into evidence. Petitioner's answering brief was not due until more than six months after. Facsimiles appear in the Court's docket and are available to petitioner electronically. We accept as correct and find that, as evidenced by deposits or receipts into petitioner's accounts, he received the following amounts from sales of items through the Christian Media Network: $395,387, $393,172, $380,591, $359,495, $265,221, $261,147 for 2005 through 2010, respectively (collectively, sales receipts).

Neither the Christian Media Network nor any of its components was organized as an artificial person separate from petitioner (i.e., an entity, such as a corporation, with legal rights and duties). Petitioner exercised unfettered control over the monies in his accounts. His internet sales activities during the years at issue were extensive, and we have no trouble concluding that, during those years,

[*16] petitioner engaged in an internet sales business carried on through the Christian Media Network.

In a merchandising business, gross income means total sales less the cost of goods sold. See secs. 1.61-3(a), 1.162-1(a), Income Tax Regs. Because petitioner has provided us with no evidence matching any costs to the sales receipts, we assume, and find, that the sales receipts were gross income to petitioner.

### 3. Deductions From Gross Income

Respondent allowed petitioner for each year a deduction for costs and expenses related to his sales. See sec. 162(a). We have no reason to question respondent's allowance.

Because petitioner failed to file tax returns for the years at issue and has not claimed any itemized deductions, he is allowed for each year only the standard deduction and deductions for personal exemptions in addition to the section 162 deduction respondent allowed. See sec. 63(b). Section 1(c) prescribes the tax rate.

### 4. Petitioner Not Exempt From Tax

Petitioner's second argument, that he is exempt from paying income tax because "he is functioning as a church", is also meritless. Petitioner has pointed to no provision in chapter 1, subtitle A, of the Code that exempts an individual functioning as a church from the obligation to pay tax on his taxable income.

[*17] Ministers may be entitled to exclude the rental value of a parsonage from gross income, see sec. 107, but they are taxable on the income they earn from ministering, see, e.g., White v. Commissioner, T.C. Memo. 1981-147, 1981 Tax Ct. Memo LEXIS 592, at *13 ("Amounts received by ministers and members of a religious order for services are includable in their gross income under section 61 and constitute taxable income unless excluded by some specific provision of the Code."). Individuals may not be subject to self-employment tax on income from the exercise of ministry, see infra part II.C, and section 501(c)(3) exempts religious organizations from income tax. But, again, there is no exemption from the chapter 1 income tax for income earned by individuals from religious activities. Petitioner was in business of selling merchandise on the internet, and he is taxable on his gain therefrom. See sec. 61(a)(2) and (3).

B.    Additions to Tax

1.    Introduction

The Commissioner bears the burden of production with respect to the liability of any individual for any penalty or addition to tax. Sec. 7491(c). His burden is to show that imposition of the penalty or addition to tax is appropriate. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). If he carries that burden, the taxpayer must come forward with evidence sufficient to persuade us that

**[\*18]** imposition of the penalty or addition to tax is incorrect (e.g., because of the existence of reasonable cause and the absence of willful neglect). See id. at 447.

> 2. Section 6651(a)(1) Additions to Tax for Failure To File a Timely Tax Return

Section 6651(a)(1) imposes an addition to tax for failure to file a timely tax return. The addition equals 5% of the amount required to be shown as tax on the delinquent return for each month or fraction thereof during which the return remains delinquent, up to a maximum addition of 25% for returns more than four months delinquent. Sec. 6651(a)(1). The addition to tax does not apply if the failure to timely file is due to reasonable cause and not to willful neglect. Id.

Respondent determined delinquent filing additions for all of the years at issue. Petitioner filed no returns for any of those years. Respondent has carried his burden of producing evidence that imposition of the delinquent filing addition is appropriate for each year at issue. Petitioner produced no evidence of (1) reasonable cause for the delinquencies and (2) lack of willful neglect. We will sustain the section 6651(a)(1) additions to tax after taking account of adjustments made to reflect the correct deficiencies in tax.

**[\*19]**     3.     <u>Section 6651(a)(2) Additions to Tax for Failure To Timely Pay Tax</u>

Section 6651(a)(2) imposes an addition to tax for failure to timely pay the amount of tax shown on a return, unless the taxpayer establishes that the failure was due to reasonable cause and not willful neglect. The addition is calculated as 0.5% of the amount shown as tax on the return but not paid, with an additional 0.5% for each month or fraction thereof during which the failure to pay continues, up to a maximum of 25%. Sec. 6651(a)(2). To carry his burden that imposition of a section 6651(a)(2) addition to tax is appropriate, the Commissioner must introduce evidence that the tax was shown on a Federal income tax return and not paid. <u>Cabirac v. Commissioner</u>, 120 T.C. 163, 170 (2003), <u>aff'd without published opinion</u>, No. 03-3157, 2004 WL 7318960 (3d Cir. Feb. 10, 2004). When a taxpayer has not filed a return, the section 6651(a)(2) addition to tax may not be imposed unless the Commissioner has prepared an SFR that meets the requirements of section 6020(b).[4] <u>Wheeler v. Commissioner</u>, 127 T.C. 200, 208-

---

[4]Sec. 6020(b) provides:

SEC. 6020(b). Execution of Return by Secretary.--

(1) Authority of Secretary to execute return.--If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such

(continued...)

**[\*20]** 209 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008); Estes v. Commissioner, T.C. Memo. 2014-9, at \*14, aff'd, 577 F. App'x 205 (4th Cir. 2014).[5]

An SFR meets the requirements of section 6020(b) if it is subscribed, purports to be a return, and shows sufficient information from which to compute the taxpayer's tax liability. See, e.g., Gleason v. Commissioner, T.C. Memo. 2011-154, 2011 WL 2600917, at \*12. The SFRs that respondent prepared on petitioner's behalf each consisted of a Form 13496, a Form 4549-A, and a Form 5278. The returns are subscribed, they contain sufficient information to calculate petitioner's tax liabilities, and they purport to be returns. That combination of documents is sufficient to constitute a valid SFR under section 6020(b). See id. Petitioner filed no return for any of the years at issue and paid no tax for any of those years. He

---

[4](...continued)
return from his own knowledge and from such information as he can obtain through testimony or otherwise.

> (2) Status of returns.--Any return so made and subscribed by the Secretary shall be prima facie good and sufficient for all legal purposes.

[5]We note in passing that, while a properly made SFR is necessary before a sec. 6651(a)(2) addition to tax for failure to pay the tax shown on a return can be imposed on a nonfiler, an SFR is not a prerequisite to the Commissioner's determining a deficiency in tax. E.g., Roat v. Commissioner, 847 F.2d 1379, 1381 (9th Cir. 1988) ("Deficiency procedures set out in the Internal Revenue Code \* \* \* do not require the Commissioner to prepare a return on a taxpayer's behalf before determining and issuing a notice of deficiency."); accord Watson v. Commissioner, T.C. Memo. 2007-146, aff'd, 277 F. App'x 450 (5th Cir. 2008).

[*21] produced no evidence of (1) reasonable cause for the failure to pay and (2) lack of willful neglect. We will sustain the section 6651(a)(2) additions to tax after taking account of adjustments made to reflect the correct deficiencies in tax.

4. Section 6654 Additions to Tax for Failure To Pay Estimated Tax

Section 6654(a) provides for an addition to tax in case of any underpayment of estimated tax.[6] Respondent determined section 6654(a) additions to tax for all of the years at issue. Petitioner did not file a return for any of those years or for 2004, paid no tax for any of the years at issue, and made no estimated tax payment for any of those years. Respondent has satisfied his burden of production to show that section 6654(a) additions to tax are appropriate. Petitioner has failed to show the applicability of any exception. We will sustain the section 6654(a) additions to tax after taking account of adjustments made to reflect the correct deficiencies in tax.

C. Self-Employment Tax

Section 1401 imposes a tax on self-employment income of every individual. Self-employment income is defined as "the net earnings from self-employment derived by an individual * * * during any taxable year". Sec. 1402(b). The term

_____

[6]We have jurisdiction over the sec. 6654(a) additions to tax because petitioner did not file income tax returns for 2005 through 2010. See sec. 6665(b)(2); Franklin v. Commissioner, T.C. Memo. 2016-207, at *30 n.10.

**[\*22]** "net earnings from self-employment" is defined as "the gross income derived by an individual from any trade or business carried on by such individual, less the deductions * * * which are attributable to such trade or business". Sec. 1402(a). Individuals whose net earnings from self-employment equal or exceed $400 during the taxable year are required to report such income. Sec. 6017. Self-employment tax is assessed and collected as part of the income tax, must be included in computing any income tax deficiency or overpayment for the applicable tax period, and must be taken into account for estimated tax purposes. Sec. 1401; see also sec. 1.1401-1(a), Income Tax Regs.

Section 1402(c)(4) provides that the term "trade or business" does not include "the performance of service by a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry" if an exemption under section 1402(e) is effective for the minister. Wingo v. Commissioner, 89 T.C. 922, 929 (1987); Good v. Commissioner, T.C. Memo. 2012-323, at *42. If an individual who is a qualified minister does not file the application for exemption within the prescribed time, the individual is subject to self-employment tax. Sec. 1402(e); Wingo v. Commissioner, 89 T.C. at 929-930. Petitioner carried on an internet sales business and, in each year at issue, earned sufficient self-employment income to be subject to the tax. Even accepting his claim that, in carrying on that business,

**[\*23]** he was "functioning as a church", he has provided no evidence that he is an ordained or licensed minister or that he ever submitted a Form 4361, Application for Exemption From Self-Employment Tax for Use by Ministers, Members of Religious Orders and Christian Science Practitioners. He is therefore liable for self-employment tax. Good v. Commissioner, T.C. Memo. 2012-323, at \*42-\*43.

III.    Section 6673(a)(1) Penalty

In pertinent part, section 6673(a)(1) provides a penalty of up to $25,000 if the taxpayer has instituted or maintained proceedings before the Tax Court primarily for delay or the taxpayer's position in the proceeding is frivolous or groundless. "A taxpayer's position is frivolous if it is contrary to established law and unsupported by a reasoned, colorable argument for change in the law." Goff v. Commissioner, 135 T.C. 231, 237 (2010). "The purpose of section 6673 is to compel taxpayers to think and to conform their conduct to settled principles before they file returns and litigate." Takaba v. Commissioner, 119 T.C. 285, 295 (2002).

We may, on our own initiative, require a taxpayer to pay a section 6673(a)(1) penalty. E.g., Hamilton v. Commissioner, T.C. Memo. 2009-271, 2009 WL 4159786, at \*5. Petitioner failed to report substantial amounts of income for six years and his argument that the Code is null and void is frivolous. See Trohimovich v. Commissioner, T.C. Memo. 1989-384, 1989 WL 83993, at \*2. We

[*24] need not decide whether petitioner's other argument, that he is functioning as a church (which, in the context of this case, we reject), is also frivolous.  A taxpayer who makes frivolous arguments is not immune from penalty just because some of his arguments may not be frivolous.  See Leyshon v. Commissioner, T.C. Memo. 2015-104, at *25, aff'd, 649 F. App'x 229 (4th Cir. 2016).  Petitioner was warned by respondent both in the answer and in respondent's pretrial memorandum that he was making frivolous arguments in challenging the constitutionality of the Federal income tax system.  Petitioner ignored those warnings at his peril.  See Takaba v. Commissioner, 119 T.C. at 295. We believe petitioner is deserving of a penalty under section 6673(a)(1) of $2,500.

IV.    Conclusion

We sustain respondent's revised deficiencies, additions to tax, and the self-employment tax.  We will also impose on petitioner a section 6673(a)(1) penalty of $2,500.

Decision will be entered for respondent.